UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PAMELA TAYLOR,                                                    Plaintiff

v.                                               Civil Action No. 3:24-cv-579

HAIER US APPLIANCE SOLUTIONS, INC.                               Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Haier US Appliance Solutions, Inc.'s ("Haier") moves for summary judgment on Plaintiff Pamela Taylor's ("Taylor") claims. [DE 23]. Taylor responded [DE 26], and Haier replied [DE 28]. Taylor also moves for leave to file a sur-reply. [DE 29]. Haier responded. [DE 30]. The matters are ripe. For the reasons below, the Court **DENIES** Taylor's motion to file a sur-reply [DE 29] and **GRANTS** Haier's Motion for Summary Judgment. [DE 23].

**I.      BACKGROUND**

Haier is an appliance manufacturer with its principal place of business—also known as "Appliance Park"—located in Louisville, Kentucky. [DE 6 at 39]. Taylor has been employed by Haier since April 9, 2012, and she remains a current employee. [*Id.*]. Taylor currently serves as a Processor in Appliance Park Building 4 ("AP4"), and she has also served as Chief Union Steward for AP4 since 2020. [DE 23-2, Taylor Dep., at 154, 190].

This dispute arises out of an incident that occurred in 2023 between Taylor and her male coworker, Scott Irvin ("Irvin"). Irvin—also a current Haier employee—serves as a zone lead in AP4 and union steward, working under Taylor's supervision for purposes of union business. [*Id.* at 166, 212, 217]. Taylor and Irvin had a history of disagreements with one another, to the point that "[t]hey couldn't be in the same room[] together." [DE 23-6, Goodroad Dep., at 237]. Taylor

1

testified that Irvin was often aggressive with other employees and struggled to accept direction from her. [DE 27-2, Taylor Dep., at 492]. She testified that Irvin would "explod[e] on [her] when [she] would go to him about overtime violations [and] labor assignments being assigned wrong." [*Id.* at 444]. Taylor states that she made complaints to human resources about Irvin's "[a]ggressive behavior toward employees" and "[o]utbursts of anger." [*Id.* at 382].

This tension culminated on August 7, 2023, when Taylor learned that Irvin, without Taylor's permission, asked union members within AP4 to sign documents related to a change in the work process, which according to Taylor could lead to disciplinary action. [*Id.* at 440, 92]. Upon learning this information, Taylor texted Irvin and asked him to call her. [*Id.* at 440]. When he did not respond, she texted him again stating that he would have his union stipend withheld for failing to respond. [*Id.* at 495]. When Irvin still did not respond, Taylor approached him, questioned him about his failure to respond, and again directed Irvin to stop requesting signatures. [*Id.* at 441]. Taylor testified that Irvin then became aggressive and began yelling, and that he got in her personal space. [*Id.* at 442]. Irvin, meanwhile, stated that Taylor was the one who stepped close to him, and that she came "nose to nose and chest bumped" him. [DE 23-8 at 245, Irvin Written Statement; DE 23-7, Investigation Report, at 241]. Two co-workers—Anthony Garrett ("Garrett") and Stuart Parks ("Parks") then intervened and separated Taylor and Irvin. [*Id.*; DE 27-2, Taylor Dep., at 442].

Following the altercation, Haier human resources manager Eugene Roush ("Roush") conducted an investigation. [DE 27-2, Taylor Dep., at 445]. The altercation between Taylor and Irvin occurred during Roush's first week working at AP4, so he was not privy to Taylor's previous complaints about Irvin. [*Id.* at 428–29]. Roush interviewed Taylor, Irvin, and several witnesses to the incident, and then summarized their statements in a report. [DE 23-7]. The statements contain

conflicting reports as to whether there was physical contact between Taylor and Irvin and, if so, who initiated the contact. Both Irvin and Parks stated that Taylor "chest bumped" Irvin, and Garrett stated that Taylor made contact with Irvin when she approached him. [*Id.* at 241–42]. Samantha Goodroad ("Goodroad") stated that "[Irvin] was initiating physical contact" but that she was not one hundred percent sure there was actual contact. [*Id.* at 241]. Taylor maintained that there was no physical contact, and witnesses Takesha Carter ("Carter"), Kim Phelps ("Phelps"), and Lynett Arnold ("Arnold") stated they did not see physical contact. [*Id.* at 241–42].

The report reflects Goodroad's statement that after approaching Irvin, "[Taylor] began to walk away, and [Irvin] walked up to [Taylor] and chest bumped her in the aisle way. Melinda Adams pulled [Taylor] back while [Garrett] and [Parks] pulled Scott back. Pam then started yelling 'let him go, let him go.'" [*Id.* at 241]. Garrett stated that he was standing in line to clock out with Irvin when Taylor "walked up in between them and got in [Irvin's] face. [Taylor] asked [Irvin] a question and before Scott finished his reply, Pam started yelling. Scott then walked towards the timeclock Pam got back in his face and as she did their bodies touched and then their faces touched." [*Id.*]. Garrett then pulled Irvin away, and Parks stepped between Taylor and Irvin. [*Id.*]. Parks stated that "[Taylor] was in the wrong and came at [Irvin], chest bumped him and [Irvin] walked away." [*Id.* at 242]. Carter stated that she could not hear anything, but she saw Taylor approach Irvin and saw people pull Irvin back. [*Id.*]. She saw no physical contact. [*Id.*]. Phelps and Arnold heard Taylor and Irvin arguing and likewise saw no physical contact. [*Id.*]. Ultimately, the report recommended termination for Taylor. [*Id.* at 243].

After providing her statement, Taylor attempted to provide another statement to Roush regarding other incidents involving Irvin that occurred after August 7, 2023. [*Id.* at 409]. She wanted to inform Roush that Irvin was "following [her] outside of the plant" and that "more women

3

started coming forward" after the incident. [*Id.*]. When Taylor attempted to provide this additional statement to Roush, however, he informed her that he could not take the statement because those other incidents were not relevant to this particular case. [*Id.* at 452, 504].

On September 5, 2023, Roush sent identical letters to Taylor and Irvin stating that the investigation concluded that they each "exhibited behavior that is in violation of the Appliance Park Rules of conduct which created a hostile work environment." [DE 23-10, Taylor Suspension Letter; DE 23-11, Irvin Suspension Letter]. Both letters stated that, while termination would be appropriate, Haier would instead suspend Taylor and Irvin for one week. [*Id.*]. The letters explained that "similar conduct at any time during your tenure with GE Appliances will result in immediate termination." [*Id.*]. The letters further stated that "[t]his action settles any grievance giving rise from the investigation related to the behavior on August 7, 2023, and shall not be referred to in any other case or matter except as it relates to the employee." [*Id.*]. The letters informed Taylor and Irvin that "[t]his action will remain in your file permanently." [*Id.*].

After completing her suspension, Taylor filed a grievance alleging that GE/Haier showed "extreme favoritism, cronyism, and . . . discrimination against female employees in AP4." [DE 23-12 at 255; DE 27-2, Taylor Dep., at 457–58]. The grievance was settled [DE 23-13], and because of that settlement, Taylor's suspension letter was removed from her employment file. [DE 27-2, Taylor Dep., at 458].

On January 30, 2023, Taylor filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting that Haier discriminated against her and similarly situated female employees on the basis of their sex. [DE 23-14]. Referring to the incident with Irvin, Taylor alleged that while she was providing instruction "to a male union steward," the steward "ran up on [her] very aggressively, yelling breathing very heavily and trying to intimidate

4

me." [*Id.* at 262]. She stated that human resources initiated an investigation only after Irvin falsely reported that Taylor had chest-bumped him during the altercation. [*Id.*]. She complained that she and Irvin were given the same one-week suspension as punishment, despite Irvin's history of harassment and her complaints against him. [*Id.* at 262–63]. On June 24, 2024, the EEOC determined that it would "not further investigate this charge because [Haier] showed that [Taylor] and [Irvin] have been having a long-time disagreement since 2021 . . . [and] both [Taylor] and [Irvin] have been disciplined for the unprofessional behavior." [DE 23-16 at 286]. The EEOC advised Taylor that she would have ninety days to take the matter to federal court or "she would forever lose the right to sue [Haier] in this matter." [*Id.*].

In February 2023, about six months before her altercation with Irvin, Taylor cooperated in a National Labor Relations Board ("NLRB") investigation related to the termination of former Haier employee Aaron Little ("Little") and other union officers. [DE 27-2, Taylor Dep., at 435, 472–77]. Taylor believes that her cooperation with this investigation led Haier to retaliate against her. [*Id.* at 477].

Taylor originally filed her complaint on September 16, 2024 in Jefferson County, Kentucky Circuit Court against both General Electric and Haier. [DE 1-1]. General Electric was soon thereafter dismissed pursuant to an Agreed Order as an incorrect party. [DE 7; DE 8]. On October 9, 2024, Haier removed the matter to this Court. [DE 1].

Taylor's complaint alleges discrimination in violation of the Kentucky Civil Rights Act ("KCRA"), KRS § 344.040 *et seq.*; (2) retaliation in violation of the KCRA; (3) discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and (4) retaliation in violation of Title VII. [DE 1-1 at 9–11]. All of Taylor's claims arise from Taylor's altercation

with Irvin and Haier's subsequent decision to suspend both employees for one week.[1] With respect to her discrimination claims, the complaint alleges that Taylor was threatened with termination while Irvin was not, despite Irvin's history of harassing other employees. [*Id.*]. With respect to the retaliation claims, the complaint alleges that Haier threatened Taylor with termination after she cooperated in the NLRB investigation. [*Id.*].

## II.    MOTION FOR LEAVE TO FILE SUR-REPLY

Taylor moves for leave to file a sur-reply to Haier's reply in support of its motion for summary judgment. [DE 29]. Because Taylor asks the Court to consider supplemental briefing in ruling on Haier's motion for summary judgment, the Court will address this motion first.

Whether to permit a party to file a sur-reply is a matter left to the trial court's discretion. *Key v. Shelby Cnty.*, 551 F. App'x 262, 264 (6th Cir. 2014) (citing *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010)); *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004). "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003). "As many courts have noted, '[s]ur-replies... are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (quoting *In re Enron Corp.* Sec., 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006)). "The Sixth

---

[1] As stated further below, Taylor attempts to broaden her claims in her response to the motion for summary judgment. For example, she attempts to add new allegations of adverse employment to include not being "given a company phone" and not being "allowed to partake in Last Chance Agreements like all male Chief Union Stewards." [DE 26-1 at 305]. These allegations are not found in Taylor's complaint. "It is well-settled that a plaintiff may not expand its claims to assert new theories in response to summary judgment or on appeal." *Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013).

Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Id.*; *see, e.g., Key*, 551 F. App'x at 265 (holding that district court's denial of motion to file sur-reply was not abuse of discretion due to lack of new arguments raised in reply and six-month delay between filing of reply and motion for sur-reply).

Taylor alleges that Haier's reply "raises new arguments, including the assertion that Plaintiff limited 'her claims through her sworn testimony' and that certain actions alleged by Plaintiff do not constitute detrimental employment actions." [DE 29 at 908].[2] She maintains that she "should be permitted to file a Surreply [sic] to address and respond to these newly raised arguments." [*Id.*]. Taylor's first argument apparently takes issue with Haier's contention that her response to the motion for summary judgment improperly attempts to expand her claims and legal theories beyond what she pled in her complaint. [*see* DE 28 at 875–76]. That is, while Taylor's complaint and deposition testimony limited her claims to those arising out of the incident with Irvin on August 7, 2023, her response to the motion for summary judgment seeks to expand the basis for her claims to other, unrelated allegations. [*Id.* at 876]. Taylor's second argument—that Haier's response newly asserts that certain actions alleged by Plaintiff do not constitute detrimental employment actions—is less clear, given that Taylor points to no specific portion of Haier's reply brief. The Court construes Taylor's second argument as objecting to Haier's contention that Taylor's allegations fail to establish a case of sex discrimination. [DE 28 at 879].

Taylor's arguments are not supported by the record. Haier addressed both the limited nature of Taylor's claims and the insufficiency of her discrimination claim in its initial motion for summary judgment. For example, Haier stated that "[Taylor's] sex discrimination claims are

---

[2] Taylor's sur-reply brief, similar to her summary judgment response, is devoid of any legal support or justification for why the Court should grant her motion.

limited to Haier's decision to issue her a one-week suspension as the result of the altercation with Irvin." [DE 23-1 at 140 n.5].  Haier likewise stated that her "retaliation claims are limited to Haier's decision to issue her a one-week suspension following the altercation she instigated with Irvin." [*Id.* at 145 n.8]. As to Taylor's second argument, the entirety of Haier's initial brief is dedicated to discussing how Taylor's allegations and the facts in the record fail to establish sex discrimination and retaliation by Haier. Accordingly, Haier's reply does not raise any new legal arguments or introduce new evidence that would necessitate a sur-reply. Further, the Court granted Taylor an extension of time to review and respond to Haier's motion for summary judgment, [DE 25], and still, Taylor either ignored, or missed, these initial arguments by Haier.

Consequently, both of Taylor's bases for filing a sur-reply are false. Haier did not raise any new legal argument or introduce any new evidence in its reply brief. Instead, Taylor's request appears to be an attempt to "have the last word" in the matter. *Travelers Indem. Co. v. La Bestia Constr. Ltd. Liab. Co.,* 2025 WL 3451855, at *4 (W.D. Ky. Dec. 1, 2025) (quoting *Liberty Legal Found.*, 875 F. Supp. 2d at 797). A sur-reply is therefore not appropriate. *Key,* 551 F. App'x at 265. Taylor's motion for leave to file a sur-reply is **DENIED**.

### III.    MOTION FOR SUMMARY JUDGMENT

Taylor's complaint alleges that Haier discriminated against her based on her sex and retaliated against her for engaging in protected activity in violation of the KCRA and Title VII. Haier maintains that all of Taylor's claims fail as a matter of law. [DE 23-1].

A. <u>Standard</u>

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence

8

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carr y its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). The

9

nonmovant must does so by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

"When possible, the Federal Rules of Civil Procedure support a preference to resolve a dispute on their merits. *Kanuscewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, n. 4 (6th Cir. 2019); *Phoenix Process Equip. Co., v. Capital Equip. & Trading Co.*, 2022 WL 3365069, at *3 (W.D. Ky. Aug. 15, 2022); *Freeman v. Spoljaric*, 667 F.Supp. 3d 636, 661 (S.D. Ohio 2023) ("Where possible, 'it is preferable for courts to decide matters on the merits, rather than on procedural grounds.'" (quoting *Romero v. City of Middletown*, 2021 WL 308149, at *4 (S.D. Ohio Jan. 29, 2021))). And further, failure to address arguments in response to a motion for summary judgment may amount to forfeiture of that argument. *See Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion. (quoting *Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989))); *Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022) ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the moving party's arguments." (emphasis omitted))

B. Discrimination Claims (Counts 1 and 3)

Taylor claims that Haier discriminated against her based on her sex by threatening her, but not Irvin, with termination, and by giving them the same punishment despite Irvin's "history of harassing other employees[.]" [DE 1-1 at 8–11]. Her complaint asserts that this treatment violated

provisions in both the KCRA and Title VII prohibiting employers from discriminating on the basis of sex. [*Id.*]. Because "the general purpose of the [KCRA] is to provide a means for implementing within the state the policies embodied in Title VII," federal courts look to federal law under Title VII in assessing claims brought under the KCRA. *Watts v. Lyon Cnty. Ambulance Serv.*, 23 F. Supp. 3d 792, 808 (W.D. Ky. 2014), *aff'd*, 597 F. App'x 858 (6th Cir. 2015) (alteration in original) (quoting *Stanley v. Cent. Kentucky Cmty. Action Council, Inc.*, No. 3:11-CV-552, 2013 WL 3280264, at *5 (W.D. Ky. June 27, 2013). Taylor's KCRA claims are therefore analyzed pursuant to the same framework as her Title VII claims.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). To establish a claim of sex discrimination under Title VII, a plaintiff may introduce either direct evidence or circumstantial evidence that supports an inference of discrimination. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). "Direct evidence is evidence that 'requires no inferences or circumstantial evidence to create an inference of discrimination.'" *Hunter v. Gen. Motors LLC*, 807 F. App'x 540, 543 (6th Cir. 2020) (quoting *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018)); *see also Kentucky Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003) ("Direct evidence is evidence, which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." (quoting *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001))). Circumstantial evidence, on the other hand, "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Ondricko v. MGM Grand Detroit*, LLC, 689 F.3d 642, 649 (6th Cir. 2012) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)).

11

### 1. Direct Evidence of Discrimination

To start, Taylor offers no evidence of direct discrimination by Haier. That is, there is no "smoking gun evidence[,]" such as "written or oral statements, most likely made by the decision-maker responsible for the adverse action against the plaintiff." *See McCullough*, 123 S.W.3d at 135. Rather, Taylor admitted in her deposition that no one in human resources or management at Haier made any sex-based comments to Taylor. [DE 27-2, Taylor Dep., at 406–07]. Taylor's response maintains that Haier's handling of her altercation with Irvin constitutes direct evidence of discrimination. [DE 26-1 at 304]. She argues that Haier's decision to impose the same punishment on a male employee who had a history of aggressive behavior and a female employee who had no such history constitutes direct evidence of discrimination. [*Id.* at 304–05]. But deeming this evidence discriminatory would necessarily require the inferential leap that Taylor was only given an equally harsh punishment because of her sex. Accordingly, such evidence does not "*require*[] the conclusion that unlawful discrimination was . . . a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (emphasis added).

Taylor also claims that "[Brad] Gilbert testified that HR told [] Roush to not take [Taylor's] statement about the investigation" and implies that this is direct evidence of discrimination. [DE 26-1 at 305]. First, this is not direct evidence of discrimination because it once again requires the inference that human resources directed Roush not to take Taylor's statement because of her sex. Second, Taylor's claim misconstrues deposition testimony to support the false proposition that Roush refused to hear Taylor's account of the altercation. Brad Gilbert ("Gilbert") testified that Jon Lewis ("Lewis"), the head of human resources, told Roush not to take Taylor's statement. [DE 27-5, Gilbert Dep., at 723]. However, Taylor's own deposition testimony clarifies that Roush was

12

told not to take her statement regarding *other* incidents with Irvin, not the August 7 incident. [DE 27-1 at 504]. Moreover, the report prepared by Roush clearly indicates that he interviewed Taylor regarding the incident, [DE 23-7], and Taylor herself testified that she provided Roush with a statement on the incident [DE 27-2, Taylor Dep., at 451]. Taylor points to no other direct evidence of discrimination. As a result, Taylor can only support a claim of sex discrimination through circumstantial evidence.

### 2. *Circumstantial Evidence of Discrimination*

When a claim is based solely on circumstantial evidence of discrimination, courts must apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973); *Laster*, 746 F.3d at 726. Under *McDonnell Douglass*, a plaintiff must first establish a *prima facie* case of discrimination. *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 957 (6th Cir. 2014). To do so, she must show that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007). Once a plaintiff establishes her *prima facie* case, the burden "shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions[.]" *Shazor*, 744 F.3d at 957 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretext for unlawful discrimination—that is, "that the [employer's proffered] reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515. (emphasis in original).

### i.  *Prima Facie* Case

Focusing on the fourth prong, Haier argues that Taylor cannot make out a *prima facie* case of sex discrimination because she cannot show that she was treated differently from a similarly situated male employee. [DE 23-1 at 140–41]. Haier points out that Irvin and Taylor received exactly the same discipline as a result of the altercation. [*Id.* at 141]. Taylor responds that she was treated differently from other male employees; alleging that she was denied a company phone, barred from participating in Last Chance Agreements ("LCAs") available to the male Chief Union Steward, subjected to management-driven schedule changes, and wrongfully suspended. [DE 26-1 at 305]. She also discusses the general treatment of female Haier employees and how that treatment differs from the treatment of male employees. [*Id.* at 306–07]. For example, she maintains that management scrutinized her more stringently than male union stewards, would not listen to her in meetings, and denied her requests while granting the same requests from male employees. [*Id.*].

As a preliminary matter, the Court notes that Taylor's response inappropriately attempts to expand the nature of her claims. The discrimination claims in Taylor's complaint focus solely on the August 7, 2023 altercation with Irvin and her subsequent discipline. Similarly, her retaliation claim discusses only her cooperation with the NLRB investigation and alleges that Haier punished her for cooperating. In her response, Taylor alleges for the first time that she suffered adverse employment actions when she was denied a company phone, barred from participating in LCAs, and subjected to management-driven schedule changes. [*Id.* at 305]. She also alleges for the first time that Haier engaged in a broader pattern of sex discrimination against other female employees, affording male workers preferential treatment and subjecting female workers to heightened standards. [*Id.* at 306].

14

It is well-established that "a plaintiff may not expand [her] claims to assert new theories in response to summary judgment or on appeal." *Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013); *see also Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007). "To permit a plaintiff to do otherwise would subject defendants to unfair surprise." *Id.* (quoting *Tucker v. Union of Needletrades*, 407 F.3d 784, 788 (6th Cir. 2005)). Nothing in Taylor's complaint would put Haier on notice of what she now alleges. There was no mention of generalized sex discrimination by Haier, nor was there mention of any adverse employment actions against Taylor outside her suspension. The complaint bases its discrimination claims solely on Haier's treatment of Taylor after the altercation with Irvin. If Taylor wanted to assert these alternative bases of liability, she should have done so through an amended complaint. *See Tucker*, 407 F.3d at 788 ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)." (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005))). Accordingly, Taylor's arguments concerning other alleged instances of discrimination by Haier will not be considered by the Court. *See Dulaney v. Flex Films (USA), Inc.*, No. 3:17-CV-482-DJH-RSE, 2020 WL 5039500, at *8 (W.D. Ky. Aug. 26, 2020), *aff'd*, No. 20-6098, 2021 WL 3719358 (6th Cir. Aug. 23, 2021) (refusing to consider new claims raised for the first time in response to the motion for summary judgment).

Taylor's only remaining argument is that Haier administered discipline for the altercation with Irvin in a discriminatory manner. She takes issue with the fact that she "received the same discipline" as Irvin, when she was an "exemplary female employee who had never been in trouble" while Irvin was a "serial repeat offender[.]" [DE 26-1 at 301]. She maintains that if she were not a woman, she would not have received the same punishment as Irvin and would not have been

15

threatened with termination. [*Id.*]. Notably, Taylor admits that she was administered exactly the same punishment as Irvin. [*Id.*]. Moreover, the record reflects that both Taylor and Irvin received identical letters informing them that Haier could terminate them but would instead suspend them for one week. [DE 23-10, Taylor Suspension Letter; DE 23-11, Irvin Suspension Letter]. While Roush's initial report recommended termination for only Taylor, Haier ultimately imposed the same punishment on both Taylor and Irvin. Moreover, Kindre Batliner ("Batliner"), union president at the time of the altercation, testified that Haier considered termination for both Irvin and Taylor. [DE 23-17, Batliner Dep., at 291]. To make out a *prima facie* case, Taylor must show that Irvin "engaged in similarly-sanctionable conduct [as Taylor], but received a *less* severe sanction." *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008). But the record shows that both Taylor and Irvin engaged in the same altercation and yelled at one another, with several witnesses stating that Taylor made contact with Irvin. They therefore engaged in similarly sanctionable conduct and received the same punishment for such conduct. Taylor fails this crucial step.

### ii.       Nondiscriminatory Justification

Even if Taylor were able to establish a *prima facie* case of sex discrimination, Haier has shown a legitimate, non-discriminatory explanation for its actions. Haier explains that it concluded that Taylor's conduct created a hostile work environment in violation of the company's rules of conduct, and, given this violation, Haier could have terminated her. [DE 23-1 at 135, 143]. By suspending Taylor, Haier was acting in accordance with its policies. [*Id.* at 143].

An employer's execution of company policy constitutes a legitimate, non-discriminatory explanation for workplace discipline. *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012); *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558 (6th Cir. 2009). Here,

Haier's rules of conduct list offenses that are considered "serious" and that "will result in time off and if considered serious enough . . . could also result in discharge on the first offense." [DE 23-5 at 234]. Among the serious offenses listed are "fighting, scuffling or otherwise assaulting anyone on Company property" and "threatening, intimidating, coercing, or interfering with employees[.]" [*Id.*]. Haier maintains that it suspended Taylor for violating these policies, which is sufficient to meet its burden to offer a legitimate, non-discriminatory reason for the discipline. *See Chattman*, 686 F.3d at 349 ("[Defendant's] burden is merely one of production, not persuasion.").

### iii.    Pretext

Because Haier has articulated a nondiscriminatory justification for its action, the burden shifts back to Taylor to show by a preponderance of the evidence that Haier's justification is pretext for unlawful discrimination. *Hicks*, 509 U.S. at 515. Taylor may establish pretext by showing that the proffered reason "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Under the first method, which "is essentially an attack on the credibility of the employer's proffered reason," the plaintiff must show that "the employer did not actually have cause to take adverse action against the employee based on its proffered reason, and thus, that the proffered reason is pretextual." *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006). "Where the employer can demonstrate an honest belief in its proffered reason, however, the inference of pretext is not warranted." *Id.* Under this "honest belief" rule, an employer's proffered reason is considered honestly held when the employer can establish that it "reasonabl[y] reli[ed] on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler*

17

*Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). The second method is also an attack on the credibility of the proffered reason, but unlike the first method, "admits that the employer's proffered reason has basis in fact but denies that it created sufficient cause for the adverse employment action." *Joostberns*, 166 F. App'x at 791. This method typically requires evidence that other employees "were not [disciplined] even though they engaged in substantially identical conduct to that which the employer contends motivated its [discipline] of the plaintiff." *Id.* The third method "admits that the reason could motivate the employer but argues that the illegal reason is more likely than the proffered reason to have motivated the employer." *Id.* "[R]egardless of which rebuttal method a plaintiff uses, 'he always bears the burden of producing sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against him.'" *Gunn v. Senior Servs. of N. Kentucky*, 632 F. App'x 839, 844 (6th Cir. 2015) (quoting *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012)).

Taylor does not attempt to argue that Haier's proffered reason is pretext for unlawful discrimination. In fact, her brief fails to apply or even reference the *McDonnell Douglas* burden-shifting framework. Taylor does not show, for example, that Haier lacked cause to take adverse action against her. Moreover, the record reflects that several eyewitness employees stated that they saw Taylor yell and make contact with Irvin, indicating that Haier reasonably relied "on the particularized facts that were before it at the time the decision was made." *Chrysler Corp.*, 155 F.3d at 807. Because Haier has demonstrated an honest belief that it was simply applying company policy when disciplining Taylor, an inference of pretext is unwarranted. While Taylor asserts that she "was suspended when she shouldn't have been[,]" the Court will not credit this statement because "[a]n employee's bare assertion that the employer's proffered reason has no basis in fact

18

is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Joostberns*, 166 F. App'x at 791.

Taylor also does not deny that her conduct "created sufficient cause for the adverse employment action." *Id.* That is, she presents no evidence that other employees were not disciplined when they engaged in substantially identical conduct. Rather, she admits that Irvin was disciplined equally when he engaged in similar conduct. Finally, she presents no evidence that the illegal reason is more likely to have motivated Haier to suspend her than Haier's proffered reason. Taylor merely argues that Haier should have subjected Irvin to a harsher punishment than her because he allegedly had "a long disciplinary history." [DE 26-1 at 304]. But this does not rebut Haier's position that Taylor failed to abide by Haier's rules of conduct and therefore that she was punished in accordance with those rules.

Without any clear attempt to rebut Haier's justification, Taylor fails to meet her burden of producing sufficient evidence from which the jury could reasonably reject Haier's explanation. As a result, even if Taylor had established a *prima facie* case of discrimination, she could not succeed in showing circumstantial evidence of discrimination. For these reasons, there is no genuine dispute of material fact with respect to Counts 1 and 3, and summary judgment is warranted as a matter of law.

C. Retaliation Claims (Counts 2 and 4)

Taylor also brings a claim for retaliation against Haier under both the KCRA and Title VII. [DE 1-1 at 9-12]. She alleges that she "cooperated in a National Labor Board Investigation[,] after which she was "threatened with termination[.]" [*Id.* at 10]. She further maintains that she was "retaliated against by [Haier] due to [Taylor's] sex . . . and for [Taylor] having cooperated in the aforementioned National Labor Board Investigation." [*Id.* at 9].

19

As a preliminary matter, Haier argues that it is entitled to summary judgment on Taylor's retaliation claims because she failed to exhaust administrative remedies. [DE 23-1 at 144]. Notably, Taylor does not respond to Haier's argument that she failed to exhaust administrative remedies. The Court would therefore be within its right to find that Taylor has "waived opposition to the [argument]" and grant summary judgment on this basis. *Humphrey*, 279 F. App'x at 331; *see also Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quoting *Rouse v. Caruso*, No. 6-cv-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011))). Even so, the Court will consider the merits of Haier's argument.

Under the exhaustion doctrine, an employee is precluded from suing under Title VII unless she has exhausted her administrative remedies. *Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 236 (6th Cir. 2017). Before bringing a Title VII suit, "an employee must file a charge of discrimination with the EEOC that includes *all* claims the employee intends to bring in district court." *Id.* (emphasis added) (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)). "Only claims that are included in the charge or are 'reasonably related to or grow out of the factual allegations in the EEOC charge' may be heard in federal court." *Russ*, 720 F. App'x at 236 (quoting *Younis*, 610 F.3d at 361–62).

While Taylor filed a charge of discrimination with the EEOC, the charge alleges only Title VII sex discrimination. [DE 23-14]. The charge lacks any allegations of retaliation for engaging in protected activity. [*Id.*]. There is likewise no mention of Taylor's cooperation in the NLRB investigation. Accordingly, Taylor's current retaliation claim is "neither reasonably related to the

20

factual allegations in the charge, nor could it have grown out of them." *Russ*, 720 F. App'x at 237. While a plaintiff may file suit with regard to claims not "specifically stated in the charge," those claims must still be "within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 471 (6th Cir. 2008). In other words, if Taylor alleged sufficient facts in her EEOC charge to prompt the EEOC to investigate a claim of retaliation, she may file suit even if the EEOC did not actually investigate that claim. *Id.* While Taylor's EEOC charge focuses on her suspension after the altercation with Irvin, it contains no allegations that would lead the EEOC to investigate whether she was suspended in retaliation for engaging in protected activity such as the NLRB investigation. Accordingly, Taylor has failed to exhaust her administrative remedies, and summary judgment would be proper on this basis alone. Nevertheless, the Court will consider the merits of Taylor's retaliation claim.

Title VII prohibits employers from discriminating against an employee because the employee has engaged in conducted protected by the act. *See Laster*, 746 F.3d at 729 (citing 42 U.S.C. § 2000e-3(a)). The KCRA similarly makes it unlawful "[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter." KRS § 344.280(1). As with discrimination claims, retaliation claims under the KCRA are evaluated under the same standard as Title VII. *See Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014) (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009)); *Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 801–02 (Ky. 2004). Moreover, as with Title VII discrimination claims, Title VII retaliation claims can be established either through direct evidence

21

of retaliation or through circumstantial evidence that would support an inference of retaliation. *Laster*, 746 F.3d at 730.

Here, Taylor presents no direct evidence that her suspension was related to the NLRB investigation. Instead, Taylor states that she "was retaliated against for making" complaints and that other employees "also testified to the same." [DE 26-1 at 306]. However, as explained previously, direct evidence is that which, "if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *McCullough*, 123 S.W.3d at 135 (quoting *Walker*, 241 F.3d at 888). Taylor's argument requires the inference or presumption that Haier suspended her not due to misconduct but because of her cooperation with the NLRB investigation. This is not the "type of smoking-gun evidence" typically considered direct evidence. *Id.* Accordingly, Taylor can support her retaliation claim only through circumstantial evidence.

    *1. Circumstantial Evidence of Retaliation*

Taylor asserts that she "has circumstantial evidence of retaliation as a result of her cooperation in the National Labor Board Investigation." [DE 26-1 at 307]. Thus, her claims once again must be evaluated through the *McDonnell Douglas* framework. *See Montell*, 757 F.3d at 504. However, the elements are different. To establish a *prima facie* case of retaliation, the plaintiff must demonstrate that: "(1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Hamilton., 556 F.3d at 435 (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)). The last element requires the plaintiff to demonstrate "but-for" causation. *Beard v. AAA of Michigan*, 593 F. App'x 447, 551 (6th Cir. 2014). "But for" causation exists when the unlawful retaliation would not have occurred in the absence of the alleged action.

22

*Id.* As discussed above, if Taylor demonstrates a *prima facie* case, the burden shifts to Haier to demonstrate a legitimate non-retaliatory reason for Taylor's suspension. *McDonnell Douglas Corp.*, 411 U.S. at 803. Once Haier does so, the burden shifts back to Taylor to demonstrate that Haier's reason was pretextual. *Hamilton.,* 556 F.3d at 435.

Haier argues that the participation in the NLRB investigation is not protected activity, there is no causal connection, and even if all *prima facie* elements were met, Haier suspended Taylor for a "legitimate, non-retaliatory reason." [DE 23-1 at 145-48]. Taylor responds that she has "circumstantial evidence of retaliation" because her "complaints were not taken seriously and were dismissed by higher ups." [DE 26-1 at 307]. She states that her "ability to do her job was hindered as a result." [*Id.*]. Taylor concedes that it is "not clear whether these actions were taken within a short proximity of [Taylor]'s participation in the NLRB investigation." [*Id.*].

### i.       *Prima Facie* Case

Haier argues that Taylor cannot establish prongs 1 and 4 of her *prima facie* case. First, Haier maintains that participating in an NLRB investigation is not protected activity under Title VII. [*Id.* at 147]. Taylor again fails to respond to Haier's argument, which may constitute waiver. However, for purposes of completeness, the Court will once again reach the merits of Taylor's claim.

For purposes of a Title VII retaliation claim, there are two types of "protected activity." First, under Title VII's "opposition clause," it is unlawful for an employer to discriminate against an employee who has "opposed" any practice by the employer made unlawful under Title VII. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000); 42 U.S.C. § 2000e–3(a). Second, under Title VII's "participation clause," it is unlawful for an employer to retaliate against an employee who has "participated" in any manner in an investigation under Title VII; that is, an

23

EEOC investigation. *Id.* The opposition clause protects "complaints to management and less formal protests of discriminatory employment actions." *Mesbah v. Univ. of Louisville*, No. 3:22-CV-567-CHB, 2023 WL 6050232, at *12 (W.D. Ky. Sept. 15, 2023) (quoting *Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, at *5 (6th Cir. Aug. 2, 2022)). The participation clause protects complaints filed with the EEOC. *Johnson*, 215 F.3d at 581.

Taylor's purported "protected activity" was cooperation with an NLRB investigation related to the termination of former Haier employee Little and other union officers, which occurred six months prior to her suspension. [DE 27-2, Taylor Dep., at 435, 472–77]. Taylor also suggests that she was subject to retaliation for filing internal complaints and grievances, although this is not evident from her complaint. [DE 26-1 at 299; DE 1-1 at 10].

First, it unclear whether cooperating in an NLRB investigation constitutes "protected activity" within Title VII. The Sixth Circuit has not explicitly ruled on this. Haier cites two cases from other circuits finding that participation in an NLRB charge was not protected activity and therefore could not serve as the basis for a retaliation claim. *See Washington v. Am. Stores Co.*, 234 F.3d 1275 (7th Cir. 2000) ("[B]ecause Title VII protects from retaliation only those complaints of unlawful employment practices that are proscribed by Title VII, [the] NLRB appeal cannot form a basis for [plaintiff's] retaliation claim under Title VII; *Kwaning v. Comm. Educ. Ctr., Inc.*, 2015 WL 1600068, at *4–*5 (E.D. Penn. Apr. 8, 2015) ("[Plaintiff's] participation in any NLRB investigation dealt with unfair labor practices, rather than conduct made unlawful under Title VII[.]"). At the same time, evidence in the record suggests that the substance of the NLRB investigation related to "discrimination, retaliation, [and] harassment," of a Haier employee, [DE 27-1, Taylor Dep., at 472], and discrimination is certainly a "practice made unlawful under Title VII." *Johnson*, 215 F.3d at 578. Taylor's cooperation with the NLRB investigation could therefore

24

constitute "protected activity" under Title VII's opposition clause. *See Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344–45 (6th Cir. 2021) (explaining that there are "limited restrictions on what activity constitutes opposition activity" and that examples include "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices" (quoting *Niswander*, 529 F.3d at 721)). The Court need not decide the issue, however, because even assuming that Taylor's cooperation with the NLRB investigation was a protected activity, Taylor's claim would still fail.

To the extent Taylor argues that she was retaliated against for complaining to Haier management about discriminatory workplace practices, this theory was not set forth in Taylor's complaint. Her retaliation claims state that she "cooperated in a National Labor Board investigation" and was "subjected to retaliation . . . after cooperating in this investigation." [DE 1-1 at 10–11]. In her response, however, Taylor maintains that she is also claiming she was subject to retaliation "because of the many complaints [she] made." [DE 26-1 at 302]. In her deposition, Taylor testified that the basis for her retaliation claim is both the NLRB investigation and "voicing what was happening to females in [her workplace]." [DE 27-2 at 471]. As already stated, a "plaintiff may not expand [her] claims to assert new theories in response to summary judgment[,]" so the Court need not consider this theory. *Renner*, 516 F. App'x at 504. Even if Taylor did properly raise this theory in her complaint, however, she cannot prove that it caused her suspension, nor can she overcome Haier's nondiscriminatory justification.

Next, Haier argues that there was no causal connection between Taylor's protected activity and her suspension. "A causal link may be shown through knowledge combined with closeness in time that creates an inference of causation." *Johhnson*, 215 F.3d at 582. To meet this requirement, Taylor must "produce sufficient evidence for a reviewing court to infer that [Haier] would not have

25

taken the adverse action" had Taylor not cooperated in the NLRB investigation or complained to management about discriminatory practices. *Id.* As the Sixth Circuit has explained,

> [w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Taylor provides no evidence to suggest that Roush—the decisionmaker responsible for her suspension—knew about her cooperation in the NLRB investigation or her previous complaints to Haier management. Instead, the record establishes that Taylor's suspension occurred during Roush's first week on the job, so she had never made complaints to him in the past. [DE 27-2, Taylor Dep., at 428–29]. Taylor could not recall if she had ever spoken to Roush prior to the altercation with Irvin. [*Id.* at 430]. Taylor's sole evidence of a causal connection is that "[a]dverse treatment followed protected activity." [DE 26-1 at 302]. But the fact that she was suspended six months after cooperating with an NLRB investigation is insufficient to demonstrate a causal link. *See Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that [plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an interference of retaliation."). Temporal proximity alone can establish causation only when the employer "immediately retaliates against an employee upon learning of [the] protected activity." *Mickey*, 516 F.3d at 525. Otherwise, temporal proximity must be coupled with other evidence of retaliatory conduct. *Id.*

Here, a gap of six months between Taylor's participation in the NLRB investigation and her suspension does not constitute "immediate" retaliation. As to her prior complaints to Haier

26

management, Taylor does not state when those complaints took place, so the Court cannot rely on temporal proximity between the protected action and her suspension to find a causal link. Moreover, Taylor presents no evidence that Roush was made aware of her cooperation in the NLRB investigation or her previous complaints regarding discrimination. By contrast, there is ample evidence that Roush was aware of Taylor's involvement in the altercation with Irvin, which further dispels any notion of a retaliatory motive. *See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) ("The absence of close temporal proximity and the presence of an obviously nonretaliatory basis for the defendants' decision amount to insufficient evidence to permit an inference of retaliatory motive."). Accordingly, Taylor has failed to establish a causal connection between her protected activity and the adverse action, so she fails to establish a *prima facie* case of retaliation.

### ii.        Nondiscriminatory Justification

Even if Taylor established a causal link between her protected activity and her suspension, Haier has shown a legitimate, non-discriminatory explanation for its actions. As already explained in the context of Taylor's sex discrimination claim, Haier's justification—that Taylor violated its rules of conduct—constitutes a legitimate, non-discriminatory explanation for workplace discipline. *See Chattman*, 686 F.3d at 349. The Court incorporates its earlier analysis and simply adds that, in the context of retaliation claims, the Sixth Circuit recognizes that "an intervening legitimate reason to take an adverse employment action dispels an inference of retaliation based on temporal proximity." *McDonald v. UAW-GM Ctr. for Hum. Res.*, 738 F. App'x 848, 855 (6th Cir. 2018) (internal quotation marks omitted) (quoting *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 628 (6th Cir. 2013)); *see also Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) (holding that an employee who complained about harassment and later left his worksite

without authorization caused an intervening event that gave his employer a reason to discipline him). Here, Taylor's violation of Haier's rules of conduct constituted an intervening event that gave Haier a legitimate reason to discipline her.

### iii.   Pretext

Once again, Taylor makes no attempt to rebut Haier's nondiscriminatory justification for her suspension. For this reason, and the reasons stated above in the Court's sex discrimination analysis, the Court finds that Taylor has not met her burden of showing by a preponderance of the evidence that Haiers's proffered reason is pretext for unlawful discrimination. *See Hicks*, 509 U.S. at 515.

As a result, Taylor's retaliation claim fails as a matter of law. The Court therefore grants Haier summary judgment with respect to Counts 2 and 4 of Taylor's complaint.

### IV.   CONCLUSION

For the reasons above, the Court **DENIES** Taylor's motion for leave to file a sur-reply [DE 29] and **GRANTS** Haier's motion for summary judgment. [DE 23].

Rebecca Grady Jennings, District Judge
United States District Court

May 27, 2026

28